UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

In re

ORION HEALTHCORP, INC.,[1]

                              Debtors,

------------------------------------------------------------------X

HOWARD M. EHRENBERG, as liquidating Trustee
of the jointly administered bankruptcy estates of Orion
HealthCorp., Inc. and Constellation Healthcare
Technologies, Inc.,

                              Plaintiff,

            -against-

ALLIED WORLD NATIONAL ASSURANCE CO.,

                              Defendant.

------------------------------------------------------------------X

**MEMORANDUM &
ORDER**
CV 23-3849 (GRB)

**FILED
CLERK**

2:56 pm, Sep 05, 2024

**U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE**

**GARY R. BROWN, United States District Judge:**

      Defendant Allied World National Assurance Co. ("Defendant" or "Allied World")

appeals from an Order of the United States Bankruptcy Court for the Eastern District of New

York (the "Bankruptcy Court Order"), denying Defendant's Motion to Dismiss or Stay the

Claims Asserted in the Complaint of Howard M. Ehrenberg, in his capacity as Liquidating

Trustee (the "Trustee") of the jointly administered bankruptcy estates of Orion HealthCorp., Inc.

("Orion"), Constellation Healthcare Technologies, Inc.  ("Constellation") and certain of their

---

[1] The debtors in these Chapter 11 cases are: Orion HealthCorp, Inc.; Constellation Healthcare Technologies, Inc.;
NEMS Acquisition, LLC; Northeast Medical Solutions, LLC; NEMS West Virginia, LLC; Physicians Practice
Plus Holdings, LLC; Physicians Practice Plus, LLC; Medical Billing Services, Inc.; Rand Medical Billing, Inc.;
RMI Physician Services Corporation; Western Skies Practice Management, Inc.; Integrated Physician Solutions,
Inc.; NYNM Acquisition, LLC; Northstar FHA, LLC; Vachette Business Services; Phoenix Health, LLC; MDRX
Medical Billing, LLC; VEGA Medical Professionals, LLC; Allegiance Consulting Associates, LLC; Allegiance
Billing & Consulting, LLC; New York Network Management, LLC.

affiliated entities, and to Compel Arbitration.[2]  Bankr. DE 45.  For the reasons set forth below,

the Bankruptcy Court's Memorandum Decision and Order is AFFIRMED.

## BACKGROUND

This adversary proceeding[3] is an insurance coverage dispute concerning the availability

of coverage under an excess directors' and officers' liability insurance policy issued by Allied

World to Constellation.  The following facts and procedural history are derived from the

bankruptcy record filed with the motion.

### (1) The Directors' and Officers' Liability Insurance Policies

Over a year prior to filing a voluntary petition under Chapter 11 of the Bankruptcy Code

("Chapter 11"), Constellation took out Directors' and Officers' Liability Insurance with insurer

Hiscox Syndicate 33 (the "Primary Policy").  Bankr. DE 37, Ex. A.  Under the Primary Policy,

Hiscox Syndicate 33 agreed to pay the loss on behalf of an "insured person" due to any

"wrongful act" for which "claims" were made and reported during the Primary Policy period of

January 7, 2017 to January 7, 2018.  *Id*. at §§ 1.1, 5.6.  The Primary Policy defined "insured

person" to include "a director or officer."  *Id*. at § 3.18(i); *see also* Bankr. DE 1 ¶ 49.

The Primary Policy contained an arbitration provision that stated:

> A dispute between the **insurer** and the **policyholder** regarding any aspect of this policy
> which cannot be resolved by agreement between them within six months, shall be
> referred to a mutually agreed mediator.  If the dispute remains unresolved after
> mediation, it shall be resolved by arbitration in the London Court of International
> Arbitration (LCIA).

---

[2] Docket Entry references to the underlying adversary proceeding at issue, *Ehrenberg v. Allied World National Assurance Co.*, No. 8-21-08161(ast) (Bankr. E.D.N.Y. Dec. 20, 2021), are cited as "Bankr. DE."

[3] The adversary proceeding is related to the lead bankruptcy proceeding, *In re Orion HealthCorp, Inc.*, No. 18-BK-71748 (ast).  Docket Entry references to the Debtor's main bankruptcy case are cited as "*In re Orion HealthCorp, Inc.,* No. 8-18-71748 (ast), Bankr. DE."

Bankr. DE 37, Ex. A at § 5.16 (emphasis in original) (the "Arbitration Provision").  The bolded

terms, *viz*. "insurer" and "policyholder," are defined in the Primary Policy.  "Insurer" is defined

by reference to the declarations page, "as specified in Item 11 of the Schedule," which names the

entity "Hiscox Syndicate 33."  Bankr. DE 37, Ex. A at § 3.19; Appendix 140, 146.

"Policyholder" is defined as "the organisation specified in Item 1 of the schedule," which names

"Constellation Healthcare Technologies Inc."  *Id.* at § 3.31; Appendix 139, 148.

Constellation also took out an Excess Directors' & Officers' Liability Insurance

Following Form Policy (the "Excess Policy") with insurer Allied World prior to filing for

bankruptcy.  Bankr. DE 37, Ex. B.  The Excess Policy contained the following insurance

coverage grant:

> The Insurer shall pay the individuals and entities insured under the Primary Policy (also referred to herein as the "Insured") for Loss after exhaustion by payments of all applicable underlying limits by either the Underlying Insurers as specified in Item 4 of the Declarations, the Insureds and/or any insurer under a difference-in-conditions policy written as specifically excess over the Limit of Liability provided by this Policy subject to:
>> A.  the terms and conditions of the Primary Policy as in effect the first day of the Policy Period;
>> B.  the Limit of Liability as stated in Item 3 of the Declarations; and
>> C.  the terms and conditions of, and the endorsements attached to, this Policy.

*Id*. at Endorsement No. 4; Appendix 119-120.  The Excess Policy followed form to the Primary

Policy adopting the terms and conditions of the Primary Policy subject to certain additional terms

and conditions in the Excess Policy.  Bankr. DE 37, Ex. B at Endorsement No. 7; Appendix 123 .

Allied World deleted its preprinted arbitration provision and instead adopted the

Arbitration Provision from the Primary Policy.[4]  Effective January 7, 2017, Endorsement No. 6

---

[4] The preprinted arbitration provisions that was in the Excess Policy, but which Allied World deleted, stated in pertinent part:
> Any and all disputes or differences which may arise under this Policy, whether arising before or after termination of this Policy, including any determination of the amount of Loss or the formation and validity of the Policy shall be subject to the alternative dispute resolution process ("ADR") set forth in this clause.

to the Excess Policy entitled, **DELETE ALTERNATIVE DISPUTE RESOLUTION PROCESS CLAUSE**, stated: "It is understood and agreed that Clause II., TERMS AND CONDITIONS, is amended by deleting paragraph I., ALTERNATIVE DISPUTE RESOLUTION PROCESS, in its entirety."  Bankr. DE 37, Ex. B at Endorsement No. 6; Appendix 122 (emphasis in original).

Constellation provided notice to Hiscox and Allied World of "Claims and Circumstances reasonably expected to give rise to claims against the Insured and Insured Persons under the Policies" by letter dated January 4, 2018 (the "Notice").  Bankr. DE 37-3, Ex. C.  The Notice advised Hiscox Syndicate 33 (hereinafter "Hiscox") and Allied World of potential claims against the directors and officers, including (1) failure to adequately supervise management in connection with various transactions and decisions; (2) failure to fulfill the duty of loyalty by both management and the members of the board of directors by engaging in self-interested transactions; (3) failure to fulfill the duty of care by being reasonably informed of transactions contemplated and consummated by Constellation; (4) failure to make due inquiry into transactions contemplated and consummated by Constellation; and (5) failure to adequately consider the impact of transactions on Constellation's stakeholders.  *Id.*

**(2) The Debtors' Chapter 11 Plan**

On March 16, 2018, Constellation filed a voluntary petition under Chapter 11, and the Debtors, including Orion, each filed a petition for Chapter 11 protection in the Bankruptcy Court.  *In re Orion HealthCorp, Inc.*, No. 8-18-71748 (ast), Bankr. DE 1.  On March 22, 2018,

---

Either the Insurer or the Insureds may elect the type of ADR discussed below, provided, however, that the Insureds shall have the right to reject the Insurer's choice of ADR at any time prior to its commencement, in which case the Insureds' choice of ADR shall control.
Bankr. DE 37, Ex. B at 3; Appendix 129.

the Bankruptcy Court granted a motion for joint administration of Orion's bankruptcy proceedings with the bankruptcy proceedings involving Constellation and 19 other entities (collectively "Debtors").  *Id.* at DE 34.  The Debtors filed a Third Amended Joint Plan of Liquidation (the "Plan") and a Third Amended Disclosure Statement for Debtors' Plan pursuant to Chapter 11 on January 6, 2019.  *Id.* at DE 645-47.  The Bankruptcy Court confirmed the Plan on February 26, 2019, and the Trustee succeeded to all rights and claims of the Debtors pursuant to a confirmed plan of reorganization.  *Id.* at DE 701.

**(3)  The Underlying Shareholder and Director and Officer Actions**

Following the filing of the Debtors' bankruptcy petitions, various adversary proceedings commenced.  On March 29, 2018, Constellation and other debtors commenced an adversary proceeding against certain directors and officers of Constellation and Orion (the "Directors and Officers") seeking to recover actual and constructive fraudulent transfers allegedly distributed to a number of entities prior to the Chapter 11 case.  *See Ehrenberg v. Griffiths*, No. 8-18-8048(ast) (Bankr. E.D.N.Y. Mar. 29, 2018) (the "Underlying Shareholder Action")); *see also In re Orion HealthCorp, Inc.,* No. 8-18-71748 (ast), Bankr. DE 59.  After the Trustee was appointed, he filed a Second Amended Complaint in the Underlying Shareholder Action on March 12, 2020, naming several of the non-executive directors and officers as defendants.  Bankr. DE 37-4, Ex. D.

On March 13, 2020, the Trustee commenced a separate adversary proceeding against Constellation's Directors and Officers, asserting the following causes of action against them:  (1) breach of fiduciary duties regarding several challenged acquisitions of entities to inflate the valuation of the company; (2) breach of fiduciary duties resulting from a go-private merger; and (3) negligence.  *See Ehrenberg v. Griffiths*, No. 8-20-08046(ast) (Bankr. E.D.N.Y. Mar. 13, 2020) (the "Underlying D&O Action" and together with the Underlying Shareholder Action, the

"Underlying Actions"); *see In re Orion HealthCorp, Inc.,* No. 8-18-71748 (ast), Bankr. DE 825;

*see also* Bankr. DE 37-5, Ex. E .

   **(4) The Directors' and Officers' Claims for Coverage Under the Insurance Policies**

   On or before April 23, 2020, certain Directors and Officers tendered claims to both

Hiscox under the Primary Policy and Allied World under the Excess Policy for coverage in the

Underlying Actions.  Bankr. DE 1, ¶ 53.  Hiscox accepted coverage under the Primary Policy

and agreed to pay all covered losses under its terms.  *Id.* ¶ 54.  On March 2, 2021, Allied World

denied coverage under the Excess Policy, citing to Endorsement No. 2 of the Policy, which

stated:

> This Policy shall not cover any Loss in connection with any claim alleging, arising out of,
> based upon, or attributable to any wrongful act(s) committed, attempted, or allegedly
> committed or attempted prior to January 7, 2017.  This Policy shall provide coverage
> only with respect to wrongful acts occurring on or after January 7, 2017 and prior to the
> end of the Policy Period and otherwise covered under the terms and conditions of this
> Policy.

*Id.* ¶ 57; *see* Bankr. DE 37, F; *see also* Appendix 117.

   Notwithstanding Allied World's denial of coverage, the parties in the Underlying Actions

participated in court-ordered mediation sessions on March 3, 2021, April 21, 2021 and June 21,

2021.  *Id.* ¶¶ 55, 58-59.  Allied World participated in the first and last sessions.  *Id.*  As a result

of the mediations, the Trustee, Hiscox and the Directors and Officers entered into a settlement

agreement regarding the Underlying Actions.  *Id.* ¶¶ 64-66, Ex. E.  Allied World was not a party

to the settlement agreement.  *Id.* ¶¶ 62-63.  As part of that settlement, the Directors and Officers

assigned to the Trustee their rights to pursue coverage under the Excess Policy issued by Allied

World to Constellation for the Policy Period of January 7, 2017 to January 7, 2018 (hereinafter

the "Allied World Policy").[5]  *Id*. ¶¶ 65-66.  The Bankruptcy Court entered an order approving

the Settlement Agreement on December 16, 2021.  *Id*. ¶ 68, Ex. E.

### (5) The Trustee's Adversary Proceeding Against Allied World

On December 20, 2021, the Trustee, solely as assignee of the rights of the Directors and

Officers under the Allied World Policy, filed the instant adversary proceeding against Allied

World (the "Adversary Proceeding"), alleging principally that the Directors and Officers were

entitled to coverage in the Underlying Actions under the Excess Policy.[6]  *See Ehrenberg v.*

*Allied World National Assurance Co.*, No. 8-21-08161(ast) (Bankr. E.D.N.Y. Dec. 20, 2021),

Bankr. DE 1.  The Adversary Complaint asserts claims for breach of insurance contract and

breach of the implied covenant of good faith and fair dealing, and seeks declaratory relief for a

judicial declaration that the Policy provides coverage for the underlying actions.  *Id.* ¶¶ 70-97.

Notably, Constellation is not a party to the Adversary Proceeding.

On February 18, 2022, Allied World filed a motion to dismiss or stay the claims in the

Adversary Proceeding and to compel arbitration based on an arbitration provision in the Allied

---

[5]The terms of the Settlement Agreement assigned the Directors' and Officers' claims against Allied World to the Trustee as follows:

> As consideration for the promises made herein, **Defendants** hereby assign to **Trustee** any and all rights, title and interest in claims arising under, from and based upon the **Allied Policy** (including those rights relating to the defense of the **Directors and Officers Adversary Proceeding** and the Unlawful Dividend Claim asserted in the **Shareholder Adversary Proceeding,** for indemnification, and bad faith, arising out of the **Directors and Officers Adversary Proceeding** and this **Agreement**) . . . .

Appendix 188 at § 3.ii (emphasis in original).

[6]As set forth in the Complaint, the Adversary Proceeding is an insurance coverage dispute in which the insurer, Allied World allegedly "refused to participate in the defense of settlement of claims against Debtors' former Directors and Officers[] in breach of both the terms of the insurance policy Allied World issued and the covenant of good faith and fair dealing every insurer owes its insured."  Appendix 2 at ¶ 1.  The Complaint avers that the Trustee's claims consist of those assigned by the Directors and Officers to him.  For example, paragraph 7 alleges: "[t]he Trustee and Directors and Officers believe that Allied World's conduct breached its obligations under the Allied World policy.  Thus in consideration for settling the Trustee's claims, the Directors and Officers assigned their claims against Allied World to the Trustee to pursue through this action.  The Trustee, therefore, brings this action as the assignee of the Directors' and Officers' claims against Allied World for breach of its duties arising under the Allied World policy."  *Id*. at 3, ¶ 7.  Paragraph 8 alleges: "[p]laintiff Howard M. Ehrenberg is the duly appointed liquidating Trustee for the Debtors' bankruptcy estates.  The Trustee received the claims pursued here via assignment by the Directors and Officers and stands in their shoes as assignee."  *Id.* 3-4, ¶ 8.

World Policy ("Motion to Dismiss or Compel Arbitration").  Bankr. DE 7.  The Trustee opposed

the motion.  Bankr. DE 15.  In the Joint Report Outlining Discovery Plan Pursuant to Rule

7026(f) of the Federal Rules of Bankruptcy Procedure dated March 30, 2022, Allied World

asserted discovery should be stayed pending the Bankruptcy Court's decision on Allied World's

motion, however, the Trustee disagreed.  Bankr. DE 23.  Allied World agreed to limited

discovery pending the Court's decision on the motion.  On November 9, 2022, the Bankruptcy

Court held a hearing on the Motion to Dismiss or Compel Arbitration.

 The Bankruptcy Court assigned this adversary proceeding to mediation on November 30,

2022.  Bankr. DE 34.  Although the parties participated in a full-day private mediation, the

parties did not reach a settlement.  Bankr. DE 43.

 By Memorandum Decision and Order dated May 10, 2023, the Bankruptcy Court denied

Allied World's Motion to Dismiss or Compel Arbitration stating that "the mandatory arbitration

provision in the insurance policy does not apply to the parties and disputes involved in the

Complaint."  DE 1-1; *see* Bankr. DE 45.  In denying the motion, Chief Judge Alan S. Trust

addressed the federal policy favoring arbitration established by the Federal Arbitration Act and

identified a four-part test that bankruptcy courts utilize when facing a motion to compel

arbitration.  *Id.*  Applying the first factor of the analysis, the Bankruptcy Court held that under

the plain language of the arbitration provision, there was no agreement to arbitrate the claims at

issue between the parties.  *Id.*  The Court concluded that while the Federal Arbitration Act favors

arbitration, it "does not require the parties to arbitrate when they have not agreed to do so."  *Id.*

 On May 23, 2023, Allied World filed a Notice of Appeal and Statement of Election in the

District Court.  Bankr. DE 46.

On May 31, 2023, Allied World filed its Answer to the Complaint and Affirmative

Defenses.  Bankr. DE 57.  In addition, on May 31, 2023, Allied World filed a motion to

withdraw the reference to the Bankruptcy Court to this Court.  Bankr. DE 58; *see Ehrenberg v.*

*Allied World National Assurance Co.*, MC 23-1468 (GRB).  By Memorandum & Order dated

March 21, 2024, this Court denied Allied World's motion to withdraw the reference and

remanded the matter to the Bankruptcy Court.  Bankr. DE 67; *see Ehrenberg v. Allied World*

*National Assurance Co.*, MC 23-1468 (GRB), DE 11.

Allied World now appeals.

**DISCUSSION**

**A.  Standard of Review**

This Court has jurisdiction to hear appeals from decisions of a bankruptcy court pursuant

to 28 U.S.C. § 158(a), which provides in relevant part that "[t]he district courts of the United

States shall have jurisdiction to hear appeals . . . from final judgments, orders, and decrees; . . .

[and] with leave of the court, from other interlocutory orders and decrees . . . of bankruptcy

judges."  28 U.S.C. § 158(a)(1), (3).  As the Bankruptcy Court denied Allied World's Motion to

Dismiss or Compel Arbitration, jurisdiction also exists under 9 U.S.C. § 16(a), which states that

"[a]n appeal may be taken from an order refusing a stay of any action under Section 3" or from

an order "denying a petition under [S]ection 4 . . . to order arbitration to proceed."  9 U.S.C. §

16(a)(1)(A), (B); *see Coinbase, Inc. v. Bielski*, 599 U.S. 736, 740 (2023) ("Notably, Congress

provided for immediate interlocutory appeals of orders *denying* – but not of orders *granting* –

motions to compel arbitration.").  Pursuant to Rule 8013 of the Federal Rules of Bankruptcy

Procedure, on an appeal from the bankruptcy court, the district court "may affirm, modify, or

reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further

9

proceedings." *In re Bernard L. Madoff Inv. Sec., LLC*, Nos. 15 Civ. 1151, 1195, 1223, 1236, 1263 (PAE), 2016 WL 183492, at \*8 (S.D.N.Y. Jan. 14, 2016), *aff'd*, 697 F. App'x 708 (2d Cir. 2017).

A district court reviews a bankruptcy court's conclusions of law *de novo* and its findings of fact under a clearly erroneous standard. *See In re Ames Dep't Stores, Inc.*, 582 F.3d 422, 426 (2d Cir. 2009). A finding is "clearly erroneous" when the reviewing court is left with the "definite and firm conviction that a mistake has been made." *Id.*[7] "[A] bankruptcy court's conclusion with respect to enforcement of [an] arbitration clause raise mixed questions of law and fact." *MBNA Am. Bank, N.A. v, Hill*, 436 F.3d 104, 107 (2d Cir. 2006). Discretionary rulings of a bankruptcy court are reviewed for abuse of discretion. *In re Tingling*, 990 F.3d 304, 307 (2d Cir. 2021). "A bankruptcy court abuses its discretion when its ruling (1) rests on an error of law . . . or a clearly erroneous factual finding, or (2) cannot be located within the range of permissible decisions." *In re Fletcher Int'l, Ltd.*, 661 F. App'x 124, 126 (2d Cir. 2016) (summary order).

### B. Appeal from the Bankruptcy Court's Memorandum Decision and Order Denying Allied World's Motion to Dismiss or Compel Arbitration

In its appeal, Allied World challenges the Bankruptcy Court's Memorandum Decision and Order, dated May 10, 2023, denying defendant's Motion to Dismiss or Compel Arbitration. DE 5, 11. Allied World contends principally that (i) the Bankruptcy Court erred in holding that the insurance coverage dispute at issue between Allied World and the Trustee does not fall within the scope of the Arbitration Provision; and (ii) because the insurance coverage dispute between Allied World and the Trustee is a non-core proceeding and does not conflict with the

---

[7] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

Bankruptcy Code or the Debtors' reorganization plan, the Trustee's claims against Allied World should be adjudicated in arbitration. *Id.*

### 1. Federal Arbitration Act

The Federal Arbitration Act (the "Arbitration Act") establishes a "federal policy favoring arbitration agreements and mandates the enforcement of contractual arbitration provisions." *MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104, 107 (2d Cir. 2006). The Act provides that written agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Arbitration Act reflects "the fundamental principle that arbitration is a matter of contract" and requires courts to enforce arbitration agreements "according to their terms." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010); *see Morgan v. Sundance Inc.*, 596 U.S. 411, 418 (2022) ("[A] court must hold a party to its arbitration contract just as the court would to any other kind. But a court may not devise novel rules to favor arbitration over litigation"). "[W]hile doubts concerning the scope of an arbitration clause should be resolved in favor of arbitration, the presumption does not apply to disputes concerning whether an agreement to arbitrate has been made." *Goldman, Sachs & Co. v. Golden Empire Schools Fin. Auth.*, 764 F.3d 210, 215 (2d Cir. 2014). That is, while the Arbitration Act favors arbitration, it "does not require the parties to arbitrate when they have not agreed to do so." *Volt Info. Scis., Inc. v. Bd of Trs.,* 489 U.S. 468, 478 (1989).

"Like any statutory directive, the Arbitration Act's mandate may be overridden by a contrary congressional command." *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987). Disputes that involve both the Arbitration Act and the Bankruptcy Code "often present conflicts of near polar extremes." *MBNA Am. Bank, N.A.*, 436 F.3d at 108. "The Second Circuit has recognized that a Bankruptcy Court has discretion to decline to compel arbitration

when a conflict exists between the Bankruptcy Code, which favors centralization of disputes concerning a debtor's estate, and the Arbitration Act, which advocates a decentralized approach to dispute resolution." *In re Winimo Realty Corp.*, 270 B.R. 108, 118 (Bankr. S.D.N.Y. 2001) (citing *In re Crysen/Montenay Energy Co.*, 226 F.3d 160, 166 (2d Cir. 2000).  Nevertheless, in general, "the presumption in favor of arbitration generally will trump the lesser interest of bankruptcy courts in adjudicating non-core proceedings that could otherwise be arbitrated." *In re Crysen/Montenay Energy Co.*, 226 F.3d at 166.

A court considering a motion to compel arbitration, "must first decide whether the parties agreed to arbitrate." *Zachman v. Hudson Valley Federal Credit Union*, 49 F.4th 95, 101 (2d Cir. 2022); *see Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc.*, 473 U.S. 614, 626 (1985) ("[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate the dispute").  If a court concludes that the parties did so agree, it must then determine "(1) the scope of that agreement to arbitrate; (2) whether Congress intended any federal statutory claims asserted to be non-arbitrable; and (3) if some, but not all of the claims in the case are arbitrable, whether to stay the balance of the proceedings pending arbitration." *Zachman*, 49 F.4th at 101; *see Fayez-Olabi v. Credit Acceptance Corp.*, No. 21-CV-5443 (AMD)(LGD), 2022 WL 2918119, at *3 (E.D.N.Y. July 25, 2022).

## 2.  Agreement to Arbitrate

In determining whether an agreement to arbitrate exists between the parties, federal courts generally apply state-law contract principles. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016); *see Burch v. 1412 Lansdowne Operating, LLC*, No. 18-CV-3000 (RPK) (ST), 2021 WL 4443768, at *4 (E.D.N.Y. Sept. 29, 2021) ("In determining whether parties have entered a valid agreement to arbitrate, courts generally should apply ordinary state-law principles

12

that govern the formation of contracts, but in doing so, must give due regard to the federal policy favoring arbitration"); *see also In re Celsius Network LLC*, 658 B.R. 643, 659 (Bankr. S.D.N.Y. 2024) (holding that to ascertain whether the parties agreed to arbitration, "courts will look to the plain language of the arbitration clause").

"To determine which state's law applies to the issue of contract formation, a federal court sitting with federal question jurisdiction looks to the choice of law doctrine of the forum state." *In re Koper*, 516 B.R. 707, 717 (Bankr. E.D.N.Y. 2014). "In New York, where this Court sits, courts will enforce the parties' contractual choice of law provision so long as the chosen law bears a reasonable relationship to the parties or the transaction." *Id.* Here, the Primary Policy, which relevant terms and conditions were adopted by the Excess Policy, specifically provides that:

> [a]ny interpretation of this policy or issue relating to its construction, validity or operation shall be determined by the laws of New York. No amendment to this policy will be effective unless it is written.

Bankr. DE 37, Ex. A at § 5.22. Accordingly, the Court will apply New York law to determine whether a valid arbitration agreement exists between the parties.

"The rules of contract construction are well-settled under New York law; the starting point is the contract's language." *Horowitz v. American Int'l Group, Inc.*, 498 F. App'x 51, 53 (2d Cir. 2012). "The cardinal principle for the construction and interpretation of insurance contracts . . . is that the intentions of the parties should control . . . [and] the meaning of particular language found in insurance policies should be examined in light of the business purposes sought to be achieved by the parties and the plain meaning of the words chosen by them to effect these purposes." *Newmont Mines Ltd. v. Hanover Ins. Co.*, 784 F.2d 127, 135 (2d Cir. 1986). "Under New York law, courts bear the responsibility of determining the rights or

13

obligations of parties under insurance contracts based on the specific language of the policies. . .

. [T]he court may not write into the contract conditions the parties did not insert by adding or

excising terms under the guise of construction, nor may it construe the language in such a way as

would distort the contract's apparent meaning." *Georgitsi Realty, LLC v. Penn-Star Ins. Co.*,

702 F.3d 152, 155 (2d Cir. 2012).  Thus, "[w]here a contract is clear and unambiguous on its

face, the intent of the parties must be gleaned from the four corners of the instrument, and not

from extrinsic evidence." [8] *RJE Corp. v. Nashville Indus. Corp.*, 329 F.3d 310, 314 (2d Cir.

2003); *see United States Fidelity & Guar. Co. v. Annunziata*, 67 N.Y.2d 229, 232 (1986)

(holding where a policy provision is "clear and unambiguous, [it] must be given [its] plain and

ordinary meaning, and courts should refrain from rewriting the agreement").

Moreover, "[w]hen a dispute arises involving the terms of an insurance contract, New

York insurance law provides that an insurance contract is interpreted to give effect to the intent

of the parties as expressed in the clear language of the contract." *Parks Real Estate Purchasing

Group v. St. Paul Fire and Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir. 2006).  Where a term is

expressly defined in a contract, the agreed-to definition generally supersedes any other meaning

of the term.  *See New York Overnight Partners, L.P. v. Gordon*, 633 N.Y.S.2d 288, 292-93 (1st

Dep't 1995) (noting that the New York Court of Appeals has adopted the rule that parties to a

contract "may expressly attach a certain meaning to a term which, then, overrides the technical,

common-law meaning of the word") (citing *Rosenfeld v. Aaron*, 248 N.Y. 437 (1928)); *see, e.g.,

Mionis v. Bank Julius Baer & Co.*, 749 N.Y.S.2d 497, 502 (1st Dep't 2002) ("[T]he court violated

---

[8] Conversely, if a provision in an insurance contract is ambiguous, the court "may consider extrinsic evidence to discern the parties' intent at the formation of the contract." *American Commercial Lines LLC v. Water Quality Ins. Syndicate*, 679 F. App'x 11, 14 (2d Cir. 2017); *see Morgan Stanley Group Inc. v. New England Ins. Co.*, 225 F.3d 270, 275-76 (2d Cir. 2000).

a fundamental principle of contract interpretation by failing to give effect to a defined term in the authorization agreement").  "When the provisions are unambiguous and understandable, courts are to enforce them as written." *Parks Real Estate Purchasing Group*, 472 F.3d at 42.

Employing these insurance contract principles, the Court concludes that the Excess Policy, as well as the incorporated provisions and clauses from the Primary Policy, are clear and unambiguous.  As an initial matter, the Excess Policy explicitly incorporated the provisions and clauses from the Primary Policy.  *See* Bankr. DE 37, Ex. B at Endorsement No. 7; Appendix 123 ("This Policy, except as herein stated, is subject to all terms, conditions, agreements and limitations of the Primary Policy in all respects as in effect on the date hereof").  With respect to the provision for arbitration, Allied World deleted its preprinted arbitration provision in the Excess Policy, *see* Bankr. DE 37, Ex. B at Endorsement No. 6; Appendix 122 (Endorsement No. 6 to the Excess Policy entitled, **DELETE ALTERNATIVE DISPUTE RESOLUTION PROCESS CLAUSE**, stated, "It is understood and agreed that Clause II., TERMS AND CONDITIONS, is amended by deleting paragraph I., ALTERNATIVE DISPUTE RESOLUTION PROCESS, in its entirety"), and expressly adopted the Arbitration Provision from the Primary Policy.  Bankr. DE 37, Ex. B at Endorsement No. 9; Appendix 125 ("It is further understood and agreed that this Policy shall follow any alternative dispute resolution provision of the Primary Policy").  The use of capitalized letters and bolded words in Endorsement No. 6 reflects that Allied World intended to adopt the more restricted Arbitration Provision from the Primary Policy.[9]

The Arbitration Provision from the Primary Policy clearly states:

---

[9]Notably, unlike the arbitration provision in the Primary Policy, the broader preprinted arbitration provision in the Excess Policy which Allied World deleted specifically referenced the "insured."  Bankr. DE 37, Ex. B at 3; Appendix 129.

> A dispute between the **insurer** and the **policyholder** regarding any aspect of this policy which cannot be resolved by agreement between them within six months, shall be referred to a mutually agreed mediator.  If the dispute remains unresolved after mediation, it shall be resolved by arbitration in the London Court of International Arbitration (LCIA).

Bankr. DE 37, Ex. A at § 5.6.  Again the bolded words in the Arbitration Provision plainly indicates an intention that the provision is limited to disputes between the "insurer" and the "policyholder."  The terms referring to the insurer and policyholder are expressly defined in the policies.

As set forth above, Constellation took out Directors' and Officers' Liability Insurance in the Primary Policy with insurer Hiscox Syndicate 33.  "Insurer" is identified as the entity "Hiscox Syndicate 33."  Bankr. DE 37, Ex. A at § 3.19; Appendix 140, 146.  Constellation took out Excess Directors' and Officers' Liability Insurance in the Excess Policy with insurer Allied World.  Bankr. DE 37, Ex. B.  Because the Arbitration Provision has been incorporated into the Allied World's Excess Policy, and Constellation purchased the Excess Policy with Allied World, the "insurer" in the Excess Policy can be construed as Allied World instead of Hiscox Syndicate 33.  "Policyholder" is defined as the organisation "Constellation Healthcare Technologies Inc."  Bankr. DE 37, Ex. A at § 3.31; Appendix 139, 148.  Because Constellation Healthcare Technologies Inc. is the policyholder in the Excess Policy, this defined term remains the same.  Given the terms are specifically defined in the Primary Policy, the Court gives effect to the defined terms and concludes that with respect to disputes concerning any aspect of Allied World's Excess Policy, the Arbitration Provision, as incorporated in the Excess Policy from the Primary Policy, is limited to the arbitration of disputes between Allied World (as insurer) and Constellation (as the policyholder).

Nevertheless, in the appeal before the Court, the dispute is between Allied World (as insurer) and the Directors and Officers[10] (as insureds) for the alleged breach of Allied World's duties arising under the Excess Policy.  The Trustee is the assignee of the Directors' and Officers' claims against Allied World as set forth in the Settlement Agreement, which the Bankruptcy Court approved.[11]  Given that, under the defined terms of the Excess Policy, the instant dispute is between the "insurer" and "the insureds," the insureds' claims against Allied World fall outside the scope of the Arbitration Provision.  Thus, because the Arbitration Provision does not compel the arbitration of disputes between Allied World (the insurer) and the Officers and Directors (the insureds), there is no valid agreement between the parties to arbitrate the claims at issue.

In short, the clear and unambiguous language of the Arbitration Provision, as incorporated in the Excess Policy from the Primary Policy, compels the arbitration of disputes between Allied World and Constellation but does not compel the arbitration of disputes between Allied World and the Directors and Officers.

---

[10]The Primary Policy defined "insured person" to include "a director or officer."  Bankr. DE 37, Ex. A at § 3.18(i); *see also* Bankr. DE 1 ¶ 49.  Significantly, "a director or officer" is not included in the definition of "policyholder."

[11]Although Allied World raises for the first time on appeal its position that the Trustee is the "policyholder" or brings this adversary proceeding on behalf of Constellation because he is the "holder of Constellation's rights" under the policy, DE 5, 11, "[i]t is a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal."  *Harrison v. Republic of Sudan*, 838 F.3d 86 (2d Cir. 2016); *see Hartford Life & Accident Ins. Co.*, 449 F.3d 435,446 (2d Cir. 2006) ("The law in this Circuit is clear that where a party has shifted his position on appeal and advances arguments not pressed below . . . waiver will bar raising the issue on appeal"); *see also Zaks v. Mosdos Chofetz Chaim, Inc.*, No. 21-CV-10441 (PMH), 2022 WL 4783215, at *4 (S.D.N.Y. Oct. 3, 2022) ("As an initial matter, this argument is waived because Appellants did not raise it to the Bankruptcy Court").  In its underlying Memorandum, Allied World acknowledged that the Trustee acts in this Adversary Proceeding "as the assignee of the Directors' and Officers' rights" under the Allied World Policy, Appendix 231, which is consistent with the Complaint and Settlement Agreement.  In any event, even considering Allied World's arguments, the Court declines to depart from the plain language of the Policy and the expressly defined terms therein to broaden the construction of the definition of "policyholder" to include the Trustee.  *See Parks Real Estate Purchasing Group*, 472 F.3d at 42.

Accordingly, while this Court applied the specified standard of review, it is worth noting that, based on this record and the parties' submissions, the Court concludes that Chief Judge Trust properly denied the Motion to Dismiss or Compel Arbitration.  Indeed, Chief Judge Trust applied considerable diligence and fairness to this matter, and thoughtfully and correctly applied the law.  And with respect to the Bankruptcy Court's factual determinations, the undersigned has not been "left with the definite and firm conviction that a mistake has been committed," *In re Ames Dep't Stores, Inc.*, 582 F.3d at 426; rather there is every reason to believe that Chief Judge Trust's well-reasoned and exceedingly thorough decision got it precisely right.

## CONCLUSION

For the foregoing reasons, the Bankruptcy Court's Memorandum Decision and Order dated May 10, 2023 denying Allied World's Motion to Dismiss or Compel Arbitration is hereby AFFIRMED in all respects.  The Clerk of the Court is directed to remand the matter to the Bankruptcy Court and close the case.

**SO ORDERED.**

Dated: Central Islip, New York
        September 5, 2024

                                    /s/ Gary R. Brown
                                    GARY R. BROWN
                                    United States District Judge